IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CRYSTAL HELBIG, Individually, and<br>as Mother and Next Friend of<br>P. B.<br>11259 Wild Cherry Lane<br>Nevada City, CA 95959 | * <br><br> * <br><br> * | |
| And | * | |
| RYAN BECK, Individually,<br>and as Father and Next Friend of<br>P.B.<br>11259 Wild Cherry Lane<br>Nevada City, CA 95959 | * <br><br> * <br><br> * | |
| *Plaintiffs* | * | |
| v. | * | Case No.: JFM 17-CV-2528 |
| UNIVERSITY OF MARYLAND ST. JOSEPH<br>MEDICAL CENTER FOUNDATION, INC. d/b/a<br>UNIVERSITY OF MARYLAND ST. JOSEPH<br>MEDICAL CENTER<br>7601 Osler Drive<br>Towson, MD 21204 | * <br><br> * <br><br> * <br><br> * | |
| **Serve On:**   **Resident Agent**<br>                   Megan Arthur<br>                   250 W. Pratt St., 24th Fl.<br>                   Baltimore, MD 21201 | * <br><br> * | |
| *Defendant* | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **COMPLAINT AND ELECTION FOR JURY TRIAL**

Plaintiffs, Crystal Helbig, Individually, as Mother and Next Friend of P.B., and Ryan

Beck, Individually and as Father and Next Friend of P.B., by and through their attorneys, Julia R.

Arfaa, Esquire, Jonathan A. Cusson, Esquire, and Julia Arfaa, P.A. d/b/a ARFAA Law Group,

hereby sue the Defendant, University of Maryland St. Joseph Medical Center Foundation, Inc.

d/b/a University of Maryland St. Joseph Medical Center (hereinafter "UMSJMC") and state as follows:

## COUNT I

1.    This action arises under the laws of the State of Maryland.  The amount in controversy exceeds the jurisdictional limits of $75,000.00 for filing such claims.

2.    The venue for this claim is proper in the United States District Court for the District of Maryland, pursuant to 28 U.S.C. § 1391(b) and the jurisdiction on the basis of diversity of citizenship is conferred upon this Court by 28 U.S.C. § 1332.

3.    A Statement of Claim was filed with the Health Claims Alternative Dispute Resolution Office of Maryland as required under Maryland law, and arbitration of the claim was waived by the Plaintiffs pursuant to §3-2A-06B of the Courts and Judicial Proceedings article.  A Statement of Claim, Waiver of Health Claims Arbitration, Order of Transfer, and Certificate of Merit and Report documents are attached hereto as *Exhibit A, Exhibit B, Exhibit C and Exhibit D,* respectively.

4.    At all relevant times, Paula McCabe, CNM, held herself out to the Plaintiffs and to the general public as an experienced, competent, and able nurse midwife, possessing or providing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of midwifery, and, as such, owed a duty to the Plaintiffs to render that degree of care and treatment which is ordinarily rendered by those who devote special study and attention to the practice of midwifery.

5.    At all relevant times, Lauren Arrington, CNM, held herself out to the Plaintiffs and to the general public as an experienced, competent, and able nurse midwife, possessing or providing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of nurse midwifery, and, as such, owed a duty to the

2

Plaintiffs to render that degree of care and treatment which is ordinarily rendered by those who devote special study and attention to the practice of midwifery.

6. At all relevant times, Steven Lacher, M.D., held himself out to the Plaintiffs and to the general public as an experienced, competent, and able obstetrician and gynecologist, possessing or providing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of obstetrics and gynecology, and, as such, owed a duty to the Plaintiffs to render that degree of care and treatment which is ordinarily rendered by those who devote special study and attention to the practice of obstetrics and gynecology.

7. At all relevant times, Arturo Yabut, M.D., held himself out to the Plaintiffs and to the general public as an experienced, competent, and able obstetrician and gynecologist, possessing or providing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of obstetrics and gynecology, and, as such, owed a duty to the Plaintiffs to render that degree of care and treatment which is ordinarily rendered by those who devote special study and attention to the practice of obstetrics and gynecology.

8. At all relevant times, Laura Rossbach, R.N., Cassia Schmid, R.N., and all labor and delivery nurses caring for Crystal Helbig and her unborn child during their November 21, 2014 hospital admission held themselves out to the Plaintiffs and to the general public as an experienced, competent, and able labor and delivery nurses, possessing or providing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of labor and delivery nursing, and, as such, owed a duty to the Plaintiffs to render that degree of care and treatment which is ordinarily rendered by those who devote special study and attention to the practice of labor and delivery nursing.

9.     At all relevant times, the Defendant, University of Maryland St. Joseph Medical

Center Foundation, Inc. d/b/a University of Maryland St. Joseph Medical Center (hereinafter

"UMSJMC"), was and is a medical facility offering administrative, obstetrical,

pediatric/neonatology, medical, surgical, nurse, nurse midwife, consultative, and other related

services to the general public and in such capacity, such institution, its agents, servants and/or

employees, administrators, medical staff, obstetricians, nurse midwives, surgeons, pediatricians,

neonatologists, nurses, and consultants held themselves out as practicing ordinary standards of

administrative, obstetrical, nurse midwife, medical, surgical, pediatric/neonatology, nursing, and

consultative care and, as such, owed a duty to the Plaintiffs to render and provide health care

within the ordinary standards of administrative, emergency medical, medical, obstetrical, nurse

midwife, pediatric/neonatology, surgical, nursing, and consultative care, and to exercise

reasonable skill and care in the selection of its personnel to provide competent administrators,

physicians, obstetricians, nurse midwives, nurses, surgeons, pediatricians, neonatologists, and

consultants, and other administrative and medical personnel, possessing that degree of skill and

knowledge which is ordinarily possessed by those who devote special study and attention to the

practice of medicine, obstetrics, nurse midwifery, nursing, surgery, pediatrics/neonatology, and

consultative care, and to supervise and provide its patients with diagnostic, medical,

administrative and consultative services and treatment commensurate with the condition from

which the patient suffers and for which patient entered said institution.

10.    At all times hereinafter set forth, all nurses, medical doctors, nurse midwives,

medical assistants, technicians, health care providers, and consultants identified in the medical

records of Crystal Helbig during her November 21, 2014 admission to the Defendant, UMSJMC,

were agents and/or apparent agents, servants, or employees of the Defendant, UMSJMC.  This

includes, but is not limited to, Paula McCabe, CNM, Lauren Arrington, CNM, Steven Lacher,

4

M.D., Arturo Yabut, M.D., Laura Rossbach, R.N., Cassia Schmid, R.N., Debra Rose Edmunds,

CRNP, and all labor and delivery nurses that were caring for Mrs. Helbig and P.B. from

November 21, 2014 at 10:01 p.m. until the time of P.B's delivery at 9:21 a.m. on November 22,

2014. All of the above-named and/or identified health care providers held themselves out as

competent physicians, nurse midwives, and/or labor and delivery nurses who were experienced,

competent, and able to appropriately manage Ms. Helbig's labor.

11.     On November 21, 2014 at approximately 10:01 p.m., Crystal Helbig presented to

the Labor and Delivery department of UMSJMC. She was 38 weeks pregnant and had ruptured

her membranes approximately 24 hours earlier at 10:00 p.m. on November 20, 2014.

12.     Mrs. Helbig was hooked up to the fetal monitor at approximately 10:40 p.m. The

findings shortly thereafter showed decelerations. Paula McCabe, CNM was the

attending physician/midwife primarily attending to Mrs. Helbig's labor at the time.

13.     At approximately 12:45 a.m., CNM McCabe performed a vaginal examination

upon Mrs. Helbig. She was 5 cm dilated and at -1 station.

14.     At 4:59 a.m., CNM McCabe performed another vaginal examination upon Mrs.

Helbig. She was 6 cm dilated and at zero station. As a result of the slow progress, Pitocin was

administered at 5:08 a.m. Additional doses of Pitocin were administered at 5:46 a.m. and 6:20

a.m.

15.     At approximately 6:30 a.m., variable decelerations were evident on P.B.'s fetal

monitor strips. At approximately 6:36 a.m., the fetal monitor strips began showing persistent

deep variable decelerations and persistent late decelerations (a worrisome sign indicative of

hypoxia and cord compression). The persistent late and deep variable decelerations continued for

hours. Further, around 6:50 a.m., P.B.'s baseline became tachycardic as it rose above 160

(another sign of fetal hypoxia). Notwithstanding these concerning findings on the strips, no labor

and delivery nurse (specifically neither Ms. Rossbach, Schmid, or any other labor and delivery
nurse) or CNM McCabe called for a physician to perform an emergent c-section.

16.     At approximately 7:20 a.m., P.B.'s baseline rose to the 170s and she continued to
show persistent deep variable decelerations on her fetal monitor strip (some late in nature). By
7:40 a.m., P.B.'s fetal monitor strips were showing prolonged late decelerations and strong and
unrelenting contractions. CNM Arrington, who became Mrs. Helbig's primary provider at 7:30
a.m., called Arturo Yabut, M.D. at 7:45 a.m., the attending physician on-call for the group. It is
unclear what was discussed or what Dr. Yabut was told. Nonetheless, he
did not come and review the fetal monitor strips nor perform an emergency c-section on Mrs.
Helbig at the time.

17.     At approximately 8 a.m., Dr. Lacher came to Mrs. Helbig's bedside for the first
time. At approximately 8:11 a.m., Mrs. Helbig began to push. Dr. Lacher was present at her
bedside at the time.

18.     At approximately 8:21 a.m., Mrs. Helbig requested a c-section. Dr. Lacher did
not perform one at that time notwithstanding her request and the deep, persistent and prolonged
variable and late decelerations which had been on-going for approximately 2 hours (and which
should have been extremely concerning for cord compression, on-going fetal hypoxia, and fetal
well-being).

19.     The deep, prolonged, and persistent deep variable and late decelerations continued
until Mrs. Helbig was taken to the operating room for an emergency c-section at 8:53 a.m.
Notwithstanding the fact that she was taken to the OR for a c-section at that time, there was no
sense of urgency in getting the c-section performed. Given the obvious fetal distress seen on the
strips for hours, an emergency c-section should have been performed by Dr. Lacher. Instead,

6

Mrs. Helbig entered the OR at 8:53 a.m., an incision was made at 9:08 a.m., and P.B. was not delivered for another thirteen (13) minutes (9:21 a.m.).

20.     At the time of delivery, P.B. was limp, flaccid, and pale with a heart rate of 90. She had no respiratory effort. Cord blood gases were taken and were as follows: cord arterial ph of 6.76 and a cord venous ph of 6.95; obvious findings of labor hypoxia and asphyxia. Given her dire status, it took the health care providers three minutes to intubate her. Apgars were 1, 1, 3, and 4 at 1, 5, 10, and 15 minutes respectively. P.B. was transported at 2 hours of life to the University of Maryland with seizures and suspected oxygen brain injury. At the University of Maryland, she was diagnosed with hypoxic ischemic encephalopathy (HIE).

21.     P.B. is currently 2 ½ years old. She carries a diagnosis of hypoxic ischemic encephalopathy and spastic quadriplegic cerebral palsy. She is tube fed and has controlled seizures. She is severely compromised both cognitively and physically and is unable to perform any of the activities that a 2 ½ year old can perform. Her brain injury is devastating and permanent. All of P.B.'s injuries are due to the negligence of the above named and mentioned Defendants.

22.     The Healthcare Provider, Paula McCabe, CNM, was negligent and careless in the following respects:

    a.      failing to appropriately manage Mrs. Helbig's labor;

    b.      failing to notice concerning changes on the fetal monitor strips indicative of hypoxia and cord compression and treat for same;

    c.      failing to have concern for Baby P.B.'s persistent and prolonged late and variable decelerations and timely call a physician or for a c-section concerning same;

    d.      failing to place fetal distress on the differential diagnosis and timely call for a physician to deliver by c-section;

    e.      failing to properly monitor Mrs. Helbig and Baby P.B.;

7

     f.  failing to prevent Baby P.B.'s hypoxic-ischemic brain injury and spastic
       quadriplegic cerebral palsy; and

     g.  was otherwise negligent and careless.

  23.  The Healthcare Provider, Lauren Arrington, CNM, was negligent and careless in

the following respects:

     a.  failing to appropriately manage Mrs. Helbig's labor;

     b.  failing to notice concerning changes on the fetal monitor strips indicative
       of hypoxia and cord compression and treat for same;

     c.  failing to have concern for Baby P.B.'s persistent and prolonged late and
       variable decelerations and timely call a physician or for a c-section
       concerning same;

     d.  failing to place fetal distress on the differential diagnosis and timely call
       for a physician to deliver by c-section;

     e.  failing to properly monitor Mrs. Helbig and Baby P.B.;

     f.  failing to prevent Baby P.B.'s hypoxic-ischemic brain injury and spastic
       quadriplegic cerebral palsy; and

     g.  was otherwise negligent and careless.

  24.  The Healthcare Provider, Arturo Yabut, M.D., was negligent and careless in the

following respects:

     a.  failing to appropriately manage Mrs. Helbig's labor;

     b.  failing to appropriately respond to the call from CNM Arrington and
       immediately deliver P.B. by c-section;

     c.  failing to have concern for Baby P.B.'s persistent and prolonged late and
       variable decelerations and deliver by emergent c-section;

     d.  failing to properly monitor Mrs. Helbig and Baby P.B.;

     e.  failing to prevent Baby P.B.'s hypoxic-ischemic brain injury and spastic
       quadriplegic cerebral palsy; and

     f.  was otherwise negligent and careless.

25.     The Healthcare Provider, Steven Lacher, M.D., was negligent and careless in the

following respects:

- a.     failing to appropriately manage Mrs. Helbig's labor;

- b.     failing to immediately deliver P.B. via emergency c-section at 8 a.m.;

- c.     failing to have concern for Baby P.B.'s persistent and prolonged late and variable decelerations and deliver by emergent c-section;

- d.     failing to properly monitor Mrs. Helbig and Baby P.B.;

- e.     failed to perform an emergency c-section at 8:53 a.m. when he finally took P.B. for a c-section;

- f.     failing to prevent Baby P.B.'s hypoxic-ischemic brain injury and spastic quadriplegic cerebral palsy; and

- g.     was otherwise negligent and careless.

26.     The Defendant, UMSJMC, by and through its agents, apparent agents, servants,

and employees, (including, but not limited to, Paula McCabe, CNM, Lauren Arrington, CNM,

Steven Lacher, M.D., Arturo Yabut, M.D., Laura Rossbach, R.N., Cassia Schmid, R.N., and all

labor and delivery nurses that were caring for Mrs. Helbig and P.B. from November 21, 2014 at

10:01 p.m. until the time of P.B.'s delivery at 9:21 a.m. on November 22, 2014) were negligent

and careless in the following respects:

- a.     failing to appropriately manage Mrs. Helbig's labor;

- b.     failing to notice concerning changes on the fetal monitor strips indicative of hypoxia and cord compression and treat for same;

- c.     failing to have concern for Baby P.B.'s persistent and prolonged late and variable decelerations and timely call a physician for a c-section concerning same;

- d.     failing to properly monitor Mrs. Helbig's fetal monitor strips during her labor;

- e.     failing to place fetal distress on the differential diagnosis and timely call for a physician to deliver by c-section;

9

f.      failing to properly monitor Mrs. Helbig and Baby P.B.;

g.      failing to appropriately respond to the call from CNM Arrington and immediately deliver P.B. by c-section;

h.      failing to have concern for Baby P.B.'s persistent and prolonged late and variable decelerations and deliver by emergent c-section;

i.      failing to immediately deliver P.B. via emergency c-section at any point past 7 a.m.;

j.      failed to perform an emergency c-section at 8:53 a.m. when he finally took P.B. for a c-section;

k.      failing to prevent Baby P.B.'s hypoxic-ischemic brain injury and spastic quadriplegic cerebral palsy; and

l.      was otherwise negligent and careless.

27.     As a direct result of the negligence of the above-named Healthcare Providers,

P.B., was caused to suffer painful and permanent injuries to her body and brain; was caused to sustain severe mental anguish and emotional pain and suffering, was caused to incur past, present, and future hospital and medical expenses, past, present, and future expenses for life care needs, a loss of future wages and other economic benefits, and was caused to incur other financial losses and damage.

**WHEREFORE**, the Plaintiffs, Crystal Helbig and Ryan Beck, as the Parents and Next Friend of P.B., claim damages in an amount exceeding the jurisdictional threshold of seventy-five thousand dollars ($75,000) to be determined by a jury, with all costs to be paid by the Defendant, University of Maryland St. Joseph Medical Center Foundation, Inc. d/b/a University of Maryland St. Joseph Medical Center (hereinafter "UMSJMC").

## COUNT II
### (CRYSTAL HELBIG- INDIVIDUALLY)

28.     The Claimant, Crystal Helbig, incorporates by reference Paragraphs 1 through 27

as if fully set forth herein.

29.     The Claimant, Crystal Helbig, is the mother of P.B..

30.     As a direct and proximate result of the negligence of the above named Healthcare
Providers, Crystal Helbig has suffered and will continue to suffer pecuniary damages and lost
past, present, and future pre-majority medical bills, and other losses and damages.

**WHEREFORE**, the Claimant, Crystal Helbig, claims damages in an amount exceeding
the jurisdictional threshold of seventy-five thousand dollars ($75,000) to be determined by a
jury, with all costs to be paid by the Defendant, University of Maryland St. Joseph Medical
Center Foundation, Inc. d/b/a University of Maryland St. Joseph Medical Center (hereinafter
"UMSJMC").

**COUNT III**
**(RYAN BECK- INDIVIDUALLY)**

31.     The Claimant, Ryan Beck, incorporates by reference Paragraphs 1 through 28 as
if fully set forth herein.

32.     The Claimant, Ryan Beck, is the father of P.B..

33.     As a direct and proximate result of the negligence of the above named Healthcare
Providers, the Claimant, Ryan Beck, has suffered and will continue to suffer pecuniary damages
and lost past, present, and future pre-majority medical bills, and other losses and damages.

WHEREFORE, the Claimant, Ryan Beck, claims damages in an amount exceeding the jurisdictional threshold of seventy-five thousand dollars ($75,000) to be determined by a jury, with all costs to be paid by the Defendant, University of Maryland St. Joseph Medical Center Foundation, Inc. d/b/a University of Maryland St. Joseph Medical Center (hereinafter "UMSJMC").

Respectfully Submitted,

ARFAA LAW GROUP

Julia R. Arfaa, Esquire
Jonathan A. Cusson, Esquire
2002 Clipper Park Rd
Suite 300
Baltimore, MD 21211
(410) 889-1850

*Attorneys for Plaintiffs*

12

IN THE UNITED STATES DISTRICT OURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CRYSTAL HELBIG, Individually, and<br>as Mother and Next Friend of P.B. | * |
| | * |
| And | |
| | * |
| RYAN BECK, Individually,<br>and as Father and Next Friend of P.B.          * | |
| *Plaintiffs* | * |
| v. | *          Case No.: JFM 17-CV-2528 |
| UNIVERSITY OF MARYLAND ST. JOSEPH<br>MEDICAL CENTER FOUNDATION, INC. d/b/a | * |
| UNIVERSITY OF MARYLAND ST. JOSEPH<br>MEDICAL CENTER | * |
| | * |
| **Serve On:** **Resident Agent**<br>Megan Arthur<br>24th Floor | * |
| 250 W. Pratt Street<br>Baltimore, MD 21201 | * |
| | * |
| *Defendants* | |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **ELECTION FOR JURY TRIAL**

COMES NOW THE PLAINTIFFS, by and through their undersigned attorneys, and

hereby elect a jury trial in the above-captioned matter.

Respectfully submitted,

ARFAA LAW GROUP

Julia R. Arfaa
Jonathan A. Cusson
2002 Clipper Park Road
Suite 300
Baltimore, MD 21211
*Attorneys for Plaintiffs*